UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RON JACKSON | CIVIL ACTION |
| VERSUS | NO. 09-05486 |
| TRANSCOM PAYMENT SERVICES, INC.<br>AND MERCHANT E-SOLUTIONS, INC. | SECTION "N" (2) |

## ORDER AND REASONS

Presently before the Court is Defendant Merchant e-Solutions Inc.'s "Motion to Dismiss or in the Alternative, Transfer" (Rec. Doc. 5). Considering the law and the parties' submissions, **IT IS ORDERED** that the motion is **GRANTED** to the extent that this action is hereby transferred to the United States District Court for Minnesota. **IT IS ORDERED** that the motion is **DENIED** to the extent that dismissal is sought.

## Background

On or around September 21, 2002, Plaintiff, Ron Jackson, entered into an a Regional Account Executive Agreement ("the Agreement") with Transcom Payment Services, Inc. ("Transcom").[1]  Subsequently, in 2003, Defendant Merchant eSolutions, Inc., assumed the Agreement as part of an asset transfer and began using "Transcom Payment Services" as a trade

---

[1] *See* Rec. Doc. 14-2.

name.

Pursuant to the Agreement, Mr. Jackson solicited offers from merchants to purchase credit and debit card processing services, and negotiated certain terms of those offers.[2] In return, Mr. Jackson was to be paid a commission and other compensation.[3] The Agreement does not designate a certain geographical area or territory in which Mr. Jackson was to work. Rather, Mr. Jackson decided where he wanted to locate his office and which merchants he wanted to contact.[4] Finally, among various other terms, the Agreement contains the following forum selection clause, which appears in all capital letters just above the signature block:

> "THE VALIDITY, CONSTRUCTION, AND ENFORCEABILITY OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF MINNESOTA WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES THEREOF, AND THE SOLE JURISDICTION AND VENUE FOR ANY LAWSUIT ARISING HEREUNDER SHALL BE IN ANY FEDERAL OR MINNESOTA STATE COURT SITTING IN MINNEAPOLIS, MINNESOTA."[5]

At the time the Agreement was executed, Transcom was a Georgia corporation with its corporate headquarters in the Minneapolis, Minnesota area. Merchant eSolutions is a Delaware corporation with its headquarters in Redwood, California. It, however, maintains satellite offices in several states, including Minnesota, but not Louisiana. At the time the Agreement was executed, Mr. Jackson resided in San Antonio, Texas. Thereafter, however, he moved to New Orleans.

---

[2] *See* Rec. Doc. 14-2 at §§1 and 2.

[3] *Id.* at §4.

[4] *Id.* at §2(d).

[5] *Id.* at §9.

During his association with Transcom and then Merchant eSolutions, Mr. Jackson worked along the Gulf Coast.

In April 2009, Mr. Jackson filed suit in Louisiana state court, specifically Orleans Parish Civil District Court, seeking to recover compensation allegedly owed to him under the Agreement. Defendant Merchant eSolutions later removed the action to this Court. Merchant eSolutions now seeks to enforce the Agreement's forum selection clause by seeking dismissal of the action or a transfer of it to the United States District Court for Minnesota.

## Analysis

The parties agree that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstance[s]." *International Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996)(quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907 (1972)). "Unreasonableness potentially exists where (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement 'will, for all practical purposes, be deprived of his day in court'; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state." *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997), *cert. denied*, 523 U.S. 1072, 118 S. Ct. 1513 (1998). "The party resisting enforcement on these grounds bears a heavy burden of proof." *Id.* The *Bremen* rule, which first developed in the admiralty context, has been extended to diversity cases and applies whenever a party seeks dismissal based on a forum selection clause. *Id.* at 962; *International Software Sys.,* 77 F.3d at 114-15.

Additionally, when a transfer of venue is sought, pursuant to 28 U.S.C. §1404(a), the Court is to conduct a "flexible and 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28-31, 108 S. Ct. 2239, 2243-45 (1988).[6] The presence of a forum selection clause – viewed as the parties' expressed preference of venue – is significant to this inquiry. *Id.* Other relevant factors include the convenience of the designated forum to the parties and witnesses, in light of the contractually expressed preference for that forum, and the fairness of the transfer in light of the forum selection clause and the parties' relative bargaining power. *Id.* at 29-30; 108 S. Ct. at 2244. Also, in applying § 1404(a)'s interest of justice standard, the Court likewise must consider public interest factors. *Id.* at 30, 108 S. Ct. at 2244. These include: (1) administrative difficulties due to docket congestion; (2) the transferee court's familiarity with the law governing the action; (3) local interest in having localized controversies resolved at home; (4) the unfairness of burdening citizens in an unrelated forum with jury duty; and (5) judicial economy. *See, e.g., Premiere, Inc. v. Commercial Underwriters Ins. Co.*, No. 02-3199, 2003 WL 1594812 at *1-2 (E.D. La. March 25, 2003)(Barbier, J.) (discussing private and public interest factors relevant to § 1404(a).

Mr. Jackson concedes that no "overt fraud" occurred here. Otherwise, however, he maintains that other factors render the Agreement's forum selection clause unreasonable,

---

[6] The Court is aware that the motion filed by Merchant eSolutions purports to seek transfer, as an alternative to dismissal, pursuant to 28 U.S.C. §1406(a), rather than §1404(a). Merchant eSolutions, however, does not establish that, in the absence of the forum selection clause, venue would not be proper in this district. Thus, the Court finds it prudent to treat the transfer request as one made pursuant to §1404(a). *See Worker's Comp. Legal Clinic v. Bellsouth Commc'ns., Inc.,* No. 03-0722, 2003 WL 21750628 *3-4, n. 2 (E.D. La. July 28, 2003)(Engelhardt, J.) (referencing decisions concluding that the mere existence of a forum selection clause does not render another venue improper).

inconvenient, and unfair. Thus, he maintains that the provision is unenforceable. For essentially the reasons urged by Merchant eSolutions, the Court disagrees.

First, Mr. Jackson contends that he "had no input into the terms of the contract" and that the contract was a "'take it or leave it' offer."[7] Agreements presented in the form of adhesion contracts, however, are not *per se* unenforceable. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-595, 111 S. Ct. 1522, 1527-1528 (1991); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220-21 (5th Cir.), *cert. denied,* 525 U.S. 1055, 119 S. Ct. 620 (1998); *Worker's Comp. Legal Clinic v. Bellsouth Commc'ns., Inc.*, No. 03-0722, 2003 WL 21750628 *3-4 (E.D. La. July 28, 2003)(Engelhardt, J.). For instance, in *Haynsworth*, even though the defendant-underwriter required its member-investors to sign a contract with a forum selection clause, or else have their membership revoked, the Fifth Circuit enforced the forum selection clause against those who had signed the contract. 121 F.3d at 963-65. In addition, the mere failure by the defendant to explain the implications or presence of a forum selection clause does not alone constitute fraudulent or coercive behavior. *See Haynsworth*, 121 F.3d at 964-65.

Here, there is no evidence that Plaintiff was coerced or otherwise manipulated into signing the Agreement. Further, the forum selection clause at issue is not in fine print; rather, it is in all capital letters and is located just above the signature block. Nor is the language of the clause worded such that it is difficult for a layperson to understand. To the contrary, the forum selection clause is plainly stated. Finally, as this Court and others have held, "one cannot avoid the effects of a contractual provision simply by failing to read the contract." *Worker's Comp. Legal Clinic*, 2003 WL 21750628 at *3-4; *see also Rodriguez v. Class Travel Worldwide, L.L.C.*, No. 99-1706,

---

[7]  *See* Rec. Doc. 9-4, pp. 3-4.

2000 WL 222165, at *4 (E.D. La. Feb. 18, 2000)(Sear, J.)(*citing Diero v. American Airlines*, 816 F.2d 1360, 1365 (9th Cir. 1987)).

Mr. Jackson also argues the forum selection clause is unenforceable because it contravenes strong public policy concerns. Specifically, Mr. Jackson argues that the transfer may result in administrative difficulties due to docket congestion in the transferee court, and that costs related to traveling would present such a burden that he essentially would be deprived of his day in court. Mr. Jackson, however, fails to properly substantiate these assertions, or to show that any of these circumstances are so compelling that transfer must be precluded.

To demonstrate that he would be subjected to administrative difficulties and docket congestion in the transferee court, Mr. Jackson cites to an unpublished Minnesota *state court* opinion indicating that docket congestion was responsible for a criminal defendant's inability to receive a speedy trial. Mr. Jackson additionally argues that, because there is only one federal district court in Minnesota, while Louisiana has three, Louisiana federal district courts are less likely to suffer from docket congestion. Even assuming Mr. Jackson's assertions are correct, there has been no showing that the docket of the *federal* district court in Minnesota actually is busier than this Court's or, in any event, that it is so congested that his claims could not be adjudicated in a reasonable time.[8]

Additionally, Mr. Jackson argues that the burdens he and potential third-party witnesses may face if forced to travel to Minnesota are too great. Mr. Jackson does not identify these third party witnesses or their locations. Further, some litigation and travel costs should be

---

[8] Further, because of constitutional and statutory concerns unique to criminal proceedings, criminal actions usually must be completed within a shorter time period than civil actions. Thus, the state court opinion cited by Mr. Jackson is not, without more, particularly compelling here.

6

avoidable through measures such as motion practice, stipulations, and by submitting deposition testimony in lieu of live testimony.  Finally, Mr. Jackson may be able to obtain relief in the form of a cost award should he prevail.  In the absence of specific evidence that Mr. Jackson's costs would be so overwhelming as to deny him his day in court, and in the presence of the aforementioned cost-mitigating strategies, the Court does not find this consideration to compel disregard of the contractual forum selection at issue.

Further, the Court notes that the Agreement provides for the application of Minnesota, not Louisiana, law.  Similarly, at the time the Agreement was confected, the other party thereto,  Transcom, had its corporate headquarters in the Minneapolis, Minnesota area.  Thus, given that regional accountant executives, like Mr. Jackson, were allowed to live and work wherever they chose, it was not unreasonable for Transcom to centralize litigation related to those agreements in Minnesota.  And, though Mr. Jackson is correct that Merchant eSolutions is not similarly headquartered in Minnesota, it does have a satellite office there.  It is undisputed, moreover, that Merchant eSolutions has no office or other connection with Louisiana.  Finally, though Mr. Jackson now lives in Louisiana, he did not at the time he entered into the Agreement.  Accordingly, under these circumstances, the Court does not find the people and judiciary of Minnesota or Louisiana would be wronged by having this litigation conducted in Minnesota rather than Louisiana.

As stated above, the Court finds no compelling reason why the forum selection clause in the Agreement should not be enforced.  Neither party, however, has addressed the impact that dismissal would have on Mr. Jackson's ability to re-file his petition in a Minnesota court.  Thus,

because the Court finds transfer of the action, in the interest of fairness, to be appropriate, the action will be transferred rather than dismissed.

    New Orleans, Louisiana, this 20th day of August 2010.

                                        **KURT D. ENGELHARDT**
                                  **UNITED STATES DISTRICT JUDGE**